UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES E. PASIONEK,

       Plaintiff,                            Case No. 1:21-cv-12651

v.                                             Honorable Thomas L. Ludington
                                                United States District Judge

ROBERT A. PASIONEK,

       Defendant.
_____/

**OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO QUASH NOTICE OF *LIS PENDENS* AND (2) GRANTING DEFENDANT'S UNOPPOSED MOTION TO AMEND**

This is an action for breach of fiduciary duties, removed from Alcona County Circuit Court under diversity jurisdiction. ECF No. 1. Defendant has filed a motion to quash a notice of *lis pendens* filed by Plaintiff's counsel and an unopposed motion to amend his responsive pleading. ECF Nos. 10; 11. For the reasons stated hereafter, Defendant's motion to quash will be denied, and his motion amend to amend will be granted.

**I.**

The background facts are largely undisputed. In 1986, Robert A. Pasionek and his brother James formed a partnership to purchase a parcel of hunting property in Alcona County. ECF No. 1-1 at PageID.7. Thirteen years later, they purchased an adjoining parcel (the "Property"), which they apparently intended to improve with cabins and related structures. *Id.* at PageID.8; ECF No. 11 at PageID.296. Since then, the brothers' relationship has broken down. ECF No. 1-1 at PageID.8. In October 2021, Plaintiff brought this action against his brother for, among other things,

breach of fiduciary duty and fraudulent misrepresentation for attempting to sell the Property without his permission.[1] *Id.* at PageID.16–22.

The remaining facts, by contrast, are hotly contested. According to Defendant, he and Plaintiff agreed to jointly contribute capital to improve the Property, but Plaintiff did not "uph[old] his end of the bargain." *Id.* at PageID.296. Despite reneging on his obligations, Plaintiff allegedly continued to use the Property with his sons for decades. *Id.* As a result, Defendant claims, the relationship between he and his brother—and their partnership—has broken down. *Id.* Defendant asserts that Plaintiff agreed to list the Property in 2015, and that "[u]ntil this lawsuit was filed, Defendant never received any objection to the sale of the Property from Plaintiff or his representatives." *Id.*

Plaintiff paints a different picture of their relationship. Plaintiff alleges that due to his brother's 15-year absence from the Property, Plaintiff has become the Property's primary user, caretaker, and tax payor. ECF No. 1-1 at PageID.8. Although feelings had been souring for some time, Plaintiff claims that his relationship with his brother broke down in earnest only after he expressed an interest in bringing electricity to the Property and buying out his brother's share. What followed, in his words, was a "bizarre" campaign of "blackmail" and "extort[ion]." *Id.*

Along with his complaint, Plaintiff filed a "memo" that his brother—a licensed attorney— allegedly sent him in June 2021. *Id.* at PageID.35. The memo describes, in rather confounding detail, decades of family strife stemming from the Property, much of which precedes the formation

---

[1] The terms of the partnership were apparently reduced to writing, as evidenced by the partnership agreement that Defendant filed along with his motion to quash. *See* ECF No. 11-1. The agreement provides that the partnership's "business and operation . . . shall be conducted by an absolute majority in interest of the Partners." *Id.* at PageID.318. Although the parties have not yet raised the issue, they seem to disagree about whether Defendant holds a majority interest in the partnership. *See* ECF No. 13 at PageID.369 (denying Defendant's "false claims" of a "supermajority in the Partnership").

of the partnership. *See id.* at PageID.35–49. At various points, the memo accuses Plaintiff and his son Mike of larceny and "numerous [other] wrongful and criminal acts." *Id.* at PageID.35; *see also id.* at PageID.45 ("DOESN'T [Plaintiff] LOOK LIKE A DEADBEAT, CROOK, AND FELONY [sic] . . . ?").

Defendant also apparently sent Plaintiff a letter demanding payment for certain property "wrongfully and feloniously converted by [Plaintiff]" and insinuating that he had called in "favors" from local prosecutors to bring criminal charges against Plaintiff. *Id.* at PageID.74 ("<u>I have been waiting and gathering evidence against you and Mike for a long time, you dug a hole so deep that you'll never see the light of day except through bars. The prosecuting attorneys have some surprises for you and Mike too.</u> It pays to have friends in the legal community and in all the right places and to be a member for the legal community, especially friends that owe you favors.").

In short, Plaintiff alleges that "Defendant is attempting to unilaterally sell the [Property] over [his objection]" and, among other relief, seeks an order prohibiting him from doing so. *Id.* at PageID.17.

Since answering Plaintiff's complaint, Defendant has filed a motion to quash a notice of *lis pendens* that Plaintiff's counsel recorded with the Alcona County Register of Deeds. ECF No. 11. The notice describes the Property and nature of this action and states that "Plaintiff is objecting to the sale of the property and will pursue his property rights against any subsequent buyer." ECF No. 11-1 at PageID.330. Defendant seeks to quash the notice because of its interference with a pending offer to buy the Property. ECF No. 11 at PageID.296. Defendant argues that the notice was improperly recorded because this case "does not involve the title, use, or enjoyment of land." *Id.* at PageID.298–99 (quoting *Patten Corp. v. Canadian Lakes Dev. Corp.*, 788 F. Supp. 975, 978 (W.D. Mich. 1991)). He adds that even if the notice was properly recorded, it should be quashed

on equitable grounds because the harm that it causes "dwarfs any benefit to Plaintiff." *Id.* at PageID.303.

In response, Plaintiff argues that the notice was recorded to "protect [his] property rights as a Partner," given that Defendant had "excluded [him] from the sale." ECF No. 12 at PageID.349. Plaintiff also contends that "Defendant is not authorized to sell the [Property] and [that] any sale would be invalidated." *Id.* at PageID.352.

Defendant has also filed a motion to amend his responsive pleading to "add several counterclaims against Plaintiff, including Breach of Partnership Agreement, Declaratory Judgment, Dissolution of Partnership, and Slander of Title." ECF No. 10 at PageID.210. Plaintiff does not oppose the motion. *Id.*

Having reviewed the parties' briefing, this Court finds that a hearing is unnecessary and will proceed to address Defendant's motions on the papers. *See* E.D. Mich. LR 7.1(f)(2).

## II.

### A.

Defendant first argues that Plaintiff's notice of *lis pendens* should be quashed because this case "does not involve the title, use, or enjoyment of land." ECF No. 11 at PageID.298–99 (quoting *Patten Corp.*, 788 F. Supp. at 978).

A notice of *lis pendens* is a "notice, recorded in the chain of title to real property, . . . to warn all persons that certain property is the subject matter of litigation . . . ." *Ruby & Assocs., P.C. v. Shore Fin. Servs.*, 741 N.W.2d 72, 75 (Mich. Ct. App. 2007) (quoting BLACK'S LAW DICTIONARY 950 (8th ed.)), *vacated on other grounds*, 745 N.W.2d 752 (Mich. 2008)). "While a notice of lis pendens may, as a practical matter, inhibit the alienation of the property in that it warns prospective purchasers that they take subject to the judgment rendered in litigation

concerning the property, the lis pendens does not prohibit alienation." *Kauffman v. Shefman*, 426 N.W.2d 819, 822 (Mich. Ct. App. 1988).

In Michigan, the filing of a notice of *lis pendens* is governed by Michigan Compiled Laws § 600.2701, which provides:

> To render the filing of a complaint constructive notice to a purchaser of any real estate, the plaintiff shall file for record, with the register of deeds of the county in which the lands to be affected by such constructive notice are situated, a notice of the pendency of such action, setting forth the title of the cause, and the general object thereof, together with a description of the lands *to be affected thereby*.

MICH. COMP. LAWS § 600.2701(1) (emphasis added).

An action "affects" property if it "affect[s] the title to the property or the right to possess, use or enjoy it." *Ruby & Assocs.*, 741 N.W.2d at 77 (quoting 14 POWELL ON REAL PROPERTY, § 82A.02[2], p. 82A–9).

Defendant argues that this action does not "affect" the Property because Plaintiff does not "challenge the ownership of the Property," "seek to enforce the Partnership Agreement and preserve his ability to use and enjoy the Property," or "allege that he wishes to purchase the Property in his individual capacity after the Partnership is dissolved." ECF No. 11 at PageID.299. Defendant elaborates that "Plaintiff's lawsuit is not about the ownership or use of the Property," but about "who gets to make decisions for the Partnership and how the proceeds of the Property's sale should be distributed once the Partnership is dissolved." *Id.* at PageID.300.

Contrary to Defendant's claim, however, this case *does* affect the Property, as it involves Defendant's right to unilaterally alienate title to or possession of the Property over Plaintiff's objection. *See Ruby & Assocs.*, 741 N.W.2d at 76 (noting that allegations of fraudulent transfer may support a notice of lis pendens when the transfer "affect[s] title, possession, or an interest in real property"); *see also Michael v. Pelland*, No. 229876, 2002 WL 31105082, at *3 (Mich. Ct.

App. Sept. 20, 2002) (holding that partner had claim to recover property on behalf of partnership because partner conveyed property without authority). And Plaintiff *has* expressed an interest in purchasing the property in his individual capacity or, at the very least, keeping the Property within the family. *See* ECF Nos. 1-1 at PageID.8 ("[Plaintiff] wanted to buy out Defendant's share of the [Property]."); 12 at PageID.352–53 ("Th[e] Partnership agreement explicitly states that the Partnership is not profit motivated and that the land was purchased to remain in the Pasionek Family name. That is exactly what Plaintiff is trying to do—purchase Defendant's interest in the Partnership property to maintain as a Pasionek hunting camp.").

Moreover, though Defendant correctly notes that Plaintiff seeks to dissolve the partnership and appoint a receiver, *see* ECF No. 1-1 at PageID.21, he does not explain why, under either the terms of the partnership agreement or as a matter of law, dissolving the partnership would prevent Plaintiff from purchasing the Property in his individual capacity.

For these reasons, this action "affects" the Property for purposes of Michigan Compiled Laws § 600.2701(1) and, thus, Plaintiff's notice of *lis pendens* was properly recorded.

### B.

Defendant next argues that Plaintiff's notice of *lis pendens* should be quashed because the harm that it causes to Defendant "dwarfs any benefit to Plaintiff." ECF No. 11 at PageID.303.

A court may quash a properly recorded notice of *lis pendens* on equitable grounds if the benefit of the notice is "too minimal" to justify the harm that it causes. *See Altman v. City of Lansing*, 321 N.W.2d 707, 713 (Mich. Ct. App. 1982) (affirming trial court's decision to quash notice of *lis pendens* because "[t]he benefit that plaintiffs would receive under the notice of lis pendens [was] too minimal in comparison to the harm that defendants w[ould] suffer").

Defendant claims that Plaintiff's notice of *lis pendens* is "jeopardizing the pending sale of the [P]roperty" at a price favorable to the partnership. ECF Nos. 11 at PageID.295; 15 at PageID.636 (noting that a prospective buyer has made a "cash offer to purchase the Property for $280,000—a sum far in excess of what either Plaintiff or Defendant could have hoped for several years ago"). Defendant fears that if the notice is left in place, then the sale might "blowup," "forc[ing] the Partnership to hold the Property in limbo for potentially years on end." ECF Nos. 11 at PageID.304; 15 at PageID.637.

Meanwhile, Defendant claims, the notice "provide[s] no protection for Plaintiff" because "[e]ven if Plaintiff could prevail on his claim that the Property cannot be sold without [Defendant's] approval, it does not follow that the Property will remain in the Partnership's possession." ECF No. 11 at PageID.304. Instead, the partnership's dissolution would "necessarily require[] the sale of the Property." *Id.*

But even if the partnership's dissolution requires the sale of the Property, Plaintiff would presumably have the right to purchase the Property to keep it within the Pasionek family. Indeed, that is precisely what Plaintiff seeks to do. *See* ECF No. 12 at PageID.352–53. Defendant does not explain why Plaintiff could not do so, and with the close of discovery still five months away, there is not enough evidence at this juncture to determine whether Plaintiff is likely to prevail on his claims. *Cf. Altman*, 321 N.W.2d at 713 (affirming trial court's decision to quash notice of *lis pendens* because "defendants stand to be greatly harmed by the [notice]" and "it [was] extremely unlikely that plaintiffs w[ould] ever succeed in th[e] action"); ECF No. 9 (closing discovery on September 30, 2022).

At bottom, the parties present two options: either allow Defendant to sell the Property over Plaintiff's objection—and thereby potentially deprive Plaintiff of his rights in both the partnership

and the Property—or allow the parties to develop the record at the risk of "blow[ing] up" the sale. ECF Nos. 11 at PageID.295. Although neither option is ideal, allowing the parties to develop the record avoids a potentially irreparable injury to Plaintiff.

For these reasons, the notice will not be quashed on equitable grounds.

### C.

In summary, Plaintiff's notice of *lis pendens* was properly recorded, and it would be inequitable to quash it. Accordingly, Defendant's motion to quash the notice will be denied.

### III.

Defendant has also filed a motion for leave to add "several counterclaims against [Plaintiff], including Breach of Partnership Agreement, Declaratory Judgment, Dissolution of Partnership, and Slander of Title." ECF No. 10 at PageID.210. Plaintiff consented to Defendant's request by email. *See* ECF No. 10-1 at PageID.213.

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. As relevant here, Rule 15 allows a party to amend its pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(c)(1)(B).

As noted, Plaintiff consented to Defendant's request by email and has not indicated any opposition to Defendant's motion. Accordingly, Defendant may amend his pleading to incorporate the counterclaims identified in his motion.

### IV.

Accordingly, it is **ORDERED** that Defendant's Motion to Quash Notice of Lis Pendens, ECF No. 11, is **DENIED**.

Further, it is **ORDERED** that Defendant's Unopposed Motion to Amend, ECF No. 10, is **GRANTED**.

Dated: May 4, 2022

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge