UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES E. PASIONEK,

        Plaintiff/Counter-Defendant,        Case No. 1:21-cv-12651

v.        Honorable Thomas L. Ludington
        United States District Judge

ROBERT A. PASIONEK,

        Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER RESOLVING EXPERT INQUIRIES AND SCHEDULING STATUS CONFERENCE**

Thirty-eight years ago, brothers James and Robert Pasionek formed a Partnership to purchase hunting property in Alcona County, Michigan. The Partnership Agreement required both brothers to maintain capital accounts, in addition to a Partnership accounting. But none of these accounts were maintained.

By 2021, both Robert and James claimed to be the most significant capital contributors, yet neither one had financial statements or all of the source documents to corroborate their claim. After discovery and the appointment of an expert accountant, a few legal and factual questions remained before the appointed expert, Eric Larson, could complete his accounting of the Partnership. These remaining questions are addressed below, and Mr. Larson's final report—which was developed after this Court provided a draft of this Order to Mr. Larson in early August—will be included as an exhibited to this Order. Having resolved the Partnership Accounting, the Parties will be directed to attend a virtual status conference.

I.

A.

In September 1986, brothers James and Robert Pasionek formed a Partnership to purchase a parcel of hunting property in Alcona County. ECF No. 1-1 at PageID.7. Robert, a licensed attorney, drafted the Partnership Agreement. *See* ECF No. 77 at PageID.2637. Five provisions of the Agreement are particularly relevant to this dispute:

(1) Article 3.6 requires that each brother maintain "[a]n individual capital account . . . on a *constant basis*." ECF No. 28 at PageID.912 (emphasis added). According to the provision, each brother's capital account shall consist "of his original contribution" and may be increased by "his additional capital contributions" and "his Partnership profits" and decreased by "distributions to him in reduction of Partnership capital and "his share of Partnership losses." *Id.*

(2) Article 5.2 prohibits the payment of "a salary or other compensation" to a Partner "for performance of those services required of them hereunder, except under and pursuant to a written agreement." *Id.* at PageID.915.

(3) Article 5.3 provides that each Partner "shall be entitled to reimbursement for the actual cost of expenses incurred by them which are necessary to conduct the Partnership's business and reasonable with respect to the amount and the purpose of the undertakings contemplated by this Agreement." *Id.*

(4) Article 6.1 requires "the Partnership" to "keep and maintain . . . complete and accurate books, records and accounts in accordance with generally accepted accounting principles, consistently applied." *Id.* at PageID.916.

(5) Article 6.4 provides that "within 120 days after the close of each fiscal year, the Partnership will provide each Partner with a financial statement (including a balance sheet and income statement) of the Partnership for the fiscal year then ended and an annual report concerning the Partnership." *Id.*

B.

Over the next 35 years, the brothers' relationship apparently deteriorated. In 2021, Plaintiff James Pasionek sued his brother, Defendant Robert Pasionek, after Robert allegedly attempted to sell the partnership property without James's permission. ECF No. 1-1.

James originally filed his seven-count breach-of-fiduciary-duty action in Alcona County Circuit Court which was removed to this Court in November 2021. *See id.* Robert then filed a four-count counterclaim alleging, among other things, that James breached the Partnership Agreement by not making required contributions to the Partnership. *See* ECF No. 17.

Much of the brothers' dispute focuses on the value of their respective partnership capital accounts, but "[t]he answer to this factual [question] is buried under [three decades] of incomplete or disputed accounting." ECF No. 67 at PageID.2589. Indeed, it appears both brothers breached the Agreement by not maintaining this accounting.

So, on October 6, 2023, this Court appointed an expert certified public accountant, Eric J. Larson, to assist in resolving the disputed partnership accounting in accordance with the governing Partnership Agreement. *Id.* at PageID.2591–92; *see also* FED. R. CIV. P. 706 (authorizing the Court to appoint an expert witness that the parties agree on and who "consents to act" as such an expert). At a March 26, 2024 status conference "the Parties, Larson, and this Court agreed on six [unresolved] legal or factual issues that will directly impact the accounting." ECF No. 71 at PageID.2597. At an April 16, 2024 status conference, the Parties, Larson, and this Court agreed to a short virtual evidentiary hearing during which both brothers would be available for testimony regarding those six disputed accounting issues. *See* ECF No. 76 at PageID.2629.

This virtual hearing occurred on July 10, 2024, this Court presiding from the United States Courthouse in Bay City, Michigan *See id.* at PageID.2630. James and his Counsel were located in northeast Michigan, Robert was located in Phoenix, Arizona, and Robert's Counsel was located in Grand Rapids, Michigan. Both brothers were examined by their own counsel and opposing counsel, as well as Mr. Larson. *See generally* ECF No. 77. Having considered the Parties'

testimony, as well as all exhibits, this Order resolves the questions raised by Mr. Larson. Accordingly, his final accounting is attached as an exhibit to this Order.

## II.

### 1. Legal Expenses Claimed by Robert

The prevailing question Mr. Larson seeks legal guidance on is whether the legal services Robert alleges he provided to the Partnership—totaling $138,875—are capital contributions.

Notably, both brothers agree that outside counsel was hired for many of the legal disputes involving the property. Nevertheless, Robert asserts the legal services he provided over the years are all capital contributions. ECF No. 77 at PageID.2693–94. To that end, Robert maintains that "there was a verbal understanding of everything," relating to the legal services he provided, despite the fact there was never a written fee agreement. *See id.* He also argues that the legal services he provided were "not required" under the Partnership agreement, such that he is not prohibited from receiving compensation under Article 6.2 of the Partnership Agreement. *Id.* at PageID.2694. James, on the other hand, asserts Robert was never retained to provide legal services and it was never agreed that he would be paid for any legal service. *See* ECF No. 77 at PageID.2640–41.

Most of Robert's legal expenses should not be considered capital contributions. Both Parties agree that there was no written agreement that Robert would provide legal services. Indeed, it is noteworthy that Robert's name is not listed as counsel for the Pasionek Partnership in any of the litigation documents this Court has seen.

However, Robert's work related to the drafting of the Partnership Agreement, *see* ECF No. 28, will be considered a capital contribution. Indeed, he performed this work on behalf of the Partnership before Article 5.2 notified all Partners that they would have to obtain prior written notice if they were to be compensated for their work for the Partnership. ECF No. 28 at

- 4 -

PageID.915. According to his own billing records, Robert reports that, in September 1986, he spent 26.3 hours "[d]rafting purchase documents, negotiating with the parties, revising and editing documents, abstract updating, title search, life estate, formation of partnership agreement, warranty deed, quit claim deed, registrations, recordation, letter agreements, promissory notes, creation of closing binder, review of previous conveyance documents and chain of title, travel to St. Charles for closing; (19) telephone conversations[.]" ECF No. 31-12 at PageID.1007. Robert also reports his hourly rate at that time was $250. *See id.* Thus, Robert made a capital contribution of $6,575.00.

### 2. Property Maintenance, Hunting Blinds, and Log Cabin

Mr. Larson also sought guidance—both legal and factual—on the status of several expenses each brother claimed to be capital contributions: (1) James's property maintenance costs; (2) James's repair of the hunting blinds; and (3) Robert's log cabin. Although factually distinct, having considered the evidence submitted by each brother, as well as the testimony during the July 10, 2024 hearing, each of these claimed contributions are best characterized as personal expenses each brother paid for their personal use, rather than capital contributions to the partnership.

### 3. Installation of the Gravel Road

Mr. Larson also sought guidance about how to resolve the factual dispute regarding the installation of a gravel road on the Property. Robert claims he paid for the construction of the road and it is a capital contribution. James asserts he never consented to the installation of the road.

Importantly, it appears the construction of the gravel road at issue is related to a 1998 stipulated judgment entered in Alcona County Circuit Court relating to the creation of an easement. In that litigation, the Pasionek Partnership was the Plaintiff, and the judgment stated that the "Plaintiff" would bear "the cost of [] surveying and laying-out and constructing of the easement" at issue. Accordingly, this Court concludes the costs incurred by Robert for construction of the

gravel road are a capital contribution, as it was necessary to preserve the easement which runs with the property. Accordingly, Robert's $1,600 expense installing the gravel road is best classified as a capital contribution.

### 4. The Purchase of the "Small Parcel"

Finally, Mr. Larson sought factual clarity regarding the cost of the small parcel the Partnership purchased in 1999. James claims the small parcel cost $7,000, which he paid in its entirety. ECF No. 77 at PageID.2644–45. Robert, on the other hand, claims the parcel cost $15,000, of which he paid $8,000. *Id.* at PageID.2685.

The lack of factual clarity on this issue is notable. It appears the brothers' differing recollections about the cost of the small parcel are related to the fact they each have different understandings about what particular land was included in the purchase. The brothers agree that the "Small Parcel" initially included four sub-parcels. James maintains that one sub-parcel, "Parcel D," was not included in the final sale because the seller did not own it. But Robert maintains that Parcel D *was* part of the final "Small Parcel" sale.

> James recalls:
>
> [The $4,000 sale of a parcel from the Babcocks to the Pasionek Partnership was] an additional part that was never bought because it did not belong to the small front parcel . . . there was a problem with that there was supposed to be another parcel and this is a quitclaim deed, and this transaction never happened because ownership never was Babcock's to sell.
>
> We purchased – the first agreement, I purchased that with $7,000. That part of the [$]4,000 that's supposed to be for a section that Babcock did not own. And ther was an agreement between Babcock and McClain that McClain, if she agreed, they would get that other parcel. That other parcel McClain said belonged to her and the property – she was not willing to move the property lines so, therefore, that part never became part of the – what we call the small parcel . . . it never happened. There was never – we do not own the parcel that this – it never happened.

ECF No. 77 at PageID.2665.

> While Robert recalls:
>
> The purchase price of the four parcels, A through D, as is depicted on the certified survey by Mr. MacNeill is $15,000, which Parcel A through D having an allocated purchase price on those. What's confusing about this, and what's caused the problem, again, I have to correct—or explain what happened here, Parcels A, B, and C were purchased for $11,000. There's a title commitment for $11,000, not $7,000 that has been previously stated.
>
> And Parcel D has been conveyed via a quitclaim deed. The title insurance commitment only covered . . . A, B, and C, because of the fact that there was a boundary line dispute with Betty McClain, and so there's correspondence that has been submitted to the Court where Babcock said, I want to go through and close this transaction. We'll give you a quitclaim deed for the interest that we have, and I believe Parcel D is somewhere around one acre, but that has been conveyed.

*Id.* at PageID.2685.

Notably, the quitclaim deed includes Parcel D. *Id.* at PageID.2685. But the transfer of Parcel D was never recorded. *Id.* at PageID.2706–07.

In sum, the available evidence does not fully corroborate either Party's version of events. Perhaps the most compelling evidence is a document from the title company which reflects the purchase price of the small parcel was $7,000. But even still, the available evidence does not corroborate either Party's testimony of who contributed how much money for the purchase. Accordingly, the capital accounting should reflect that each brother made an equal contribution for the purchase of the small parcel.

**III.**

Having provided these resolutions to Mr. Larson's questions, Mr. Larson has prepared his final report, which includes an accounting of each brother's capital account as well as the partnership accounting. Mr. Larson has concluded that Robert's partnership account is $42,945, and James's partnership account is $80,788. *See* Exhibit A. Both Parties have agreed that the Partnership Property is to be auctioned and sold. Both Parties have further agreed that they are

entitled to utilize their capital account to be credited toward their bid if they elect to make one. So, the Parties will be directed to attend a virtual status conference to discuss the next steps necessary to wind up the Partnership according to the Agreement and to establish the precise terms of the auction of the Partnership Property.

## IV.

Accordingly, it is **ORDERED** that the Parties are **DIRECTED** to attend a TEAMS Status Conference on **September 24, 2024 at 2:00 PM EDT.**

**This is not a final order and does not close the above-captioned case.**

Dated: August 20, 2024                               s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge